310 So.2d 345 (1975)
Lavon WISHER, As County Administrator of Lee County, Florida, Appellant,
v.
NEWS-PRESS PUBLISHING CO., D/B/a the Fort Myers News Press, Appellee.
No. 74-903.
District Court of Appeal of Florida, Second District.
March 5, 1975.
*346 James T. Humphrey, County Atty., and Richard V.S. Roosa, Asst. County Atty., Fort Myers, for appellant.
Steven Carta, of Smith, Seals & Carta, Fort Myers, for appellee.
GRIMES, Judge.
This case involves the question of whether the personnel files of government employees are open to inspection under the law requiring disclosure of public records.
The case had its inception at a meeting of the Lee County Board of County Commissioners when one of the commissioners made a motion to consider the termination for cause of an unnamed department head. The motion failed for lack of a second, but the board directed that a warning be placed in the employee's file. Thereafter, the Fort Myers News Press made demand upon the County Administrator to examine the personnel files of the county department heads. Upon the refusal of the administrator to comply with the request, the News Press obtained a writ of mandamus directing her to allow it to "inspect and examine the personnel files of the employees of Lee County."
A reasonable argument can be made for the narrow proposition that the public was entitled to know the details concerning the unnamed department head who the commission saw fit to discuss in its public meeting. Yet, this information was sought by way of mandamus upon the theory that the County Administrator was under a legal duty to permit any member of the public to examine the county personnel files. Therefore, in order to decide this case, we must consider the broad question of whether that duty exists.
At common law, the public records of governmental agencies were subject to inspection but it was usually necessary for the person seeking the inspection to show that he had a special interest therein. 76 C.J.S. Records § 35. This right has been expanded by statute in Florida so that any citizen is entitled to the inspection regard less of his interest in the documents in question. The statutory definition of public records subject to inspection reads:
"119.011 Definitions.  For the purpose of this act:
(1) `Public records' means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics made or received *347 pursuant to law or ordinance or in connection with the transaction of official business by any agency.
* * * * * *"
This court recently required disclosure of a written appraisal report obtained by the county in connection with negotiations for the proposed acquisition of property. Gannett Co., Inc. v. Goldtrap, Fla.App.2nd, 1974, 302 So.2d 174. A preliminary site plan review prepared for a public building project has also been held subject to public inspection under the statute. State ex rel. Copeland v. Cartwright, 1972, 38 Fla. Supp. 6, aff'd Fla.App.4th, 1973, 282 So.2d 45.
Since governmental agencies are authorized to employ personnel, the utilization of such authority would seem to constitute official business of such an agency. Therefore, personnel records apparently fall within the broad definition of records which are made "in connection with the transaction of official business by any agency."
Certain exemptions from disclosure are set forth in § 119.07(2)(a) as follows:
"(2)(a) All public records which presently are deemed by law to be confidential or which are prohibited from being inspected by the public, whether provided by general or special acts of the legislature or which may hereafter be so provided, shall be exempt from the provisions of this section."
There are no statutes which specifically exempt personnel records. However, consideration must be given with respect to whether such records may be "deemed by law to be confidential."
It has always been held that right of inspection does not extend to all public records or documents, because public policy requires that some of them be treated as confidential. See 66 Am.Jur.2d, Records and Recording Laws, § 27. In Lee v. Beach Pub. Co., 1937, 127 Fla. 600, 173 So. 440, our Supreme Court said:
"The appellant contends that there are certain records in the police department of a city which must be kept secret and free from common inspection as a matter of public policy. This is true. The rule as stated in 23 R.C.L. 161, is as follows:
`The right of inspection does not extend to all public records or documents, for public policy demands that some of them, although of a public nature, must be kept secret and free from common inspection, such for example as diplomatic correspondence and letters and despatches in the detective police service or otherwise relating to the apprehension and prosecution of criminals.'"
Likewise, this court stated in Patterson v. Tribune Company, Fla.App.2d, 1962, 146 So.2d 623:
"Generally public records are subject to the right of inspection and publication; but this right does not apply to all public records since public policy requires that some of them, although of a public nature, be kept secret and free from public inspection... ."
In Runyon v. Board of Prison Terms and Paroles, 1938, 26 Cal. App.2d 183, 79 P.2d 101, the court declined to issue a writ of mandamus requiring disclosure of letters and other documents sent voluntarily by various individuals to the parole board in connection with the hearing and determination of applications for parole. The court held that as a matter of public policy these documents must be treated as confidential because it was common knowledge that in order to impartially and intelligently discharge the functions of the parole board it was essential to secure all possible information bearing upon applicants for parole and necessarily much of that information could only be obtained upon the understanding that it would be treated as confidential.
In determining whether a report of the fitness of a county employee could be held confidential, the court in City Council of City of Santa Monica v. Superior Court, *348 1962, 204 Cal. App.2d 68, 21 Cal. Rptr. 896, said:
"Although it has not been clearly established that all matter contained in the report was obtained only upon the assurance to the informer that it would be held confidential, it is clear that in order to obtain a report of this type necessarily much of the information could have been had only upon such an understanding. `If every citizen who knows of the unfitness of an officer or employe, or of facts he thinks require an investigation, believes it his duty to lodge information before the board, he will hesitate a long while before doing so if he knows his complaint is to be made public and becomes of the public records, so that any one may have access to it and be subjected to action for a possible libel. It is not to be expected, if that is so, that very many will come forward and lodge a complaint. * * * In our opinion these communications by citizens to the Complaint Board, covering the conduct of public officers and employes, are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated.' ..."
It is common knowledge that governmental agencies often seek information concerning prospective employees from their former employers and others having knowledge of their character. This information is supplied upon the understanding that it will be kept confidential. Should it become known that the information cannot be held inviolate, one could hardly expect further information to be forthcoming.
Almost universally, a private employer assumes the obligation of treating personnel information on a confidential basis. If government cannot assure its employees of similar protection, then the public will be prejudiced by the inability of its agencies to attract qualified personnel.
The personnel files of government employees necessarily contain personal information, much of which would be considered hearsay in a court of law. Such private matters as health records and psychological profiles may be a part of an employee's personnel file. The file may also reflect indiscretions of long years past. Even if the employee has become fully rehabilitated, the unwarranted disclosure of this information could cause immeasurable harm to him as well as to others.
The right of privacy has long been recognized in this country. See Cason v. Baskin, 1944, 155 Fla. 198, 20 So.2d 243. To permit, in the words of the statute, "any citizen of Florida" to rummage through the personnel files of any employee of state, county and city government would be to make a mockery of that right. The suggestion that when one takes a job as a city garbage collector he waives the right of privacy with respect to the public disclosure of his personnel records has little appeal.
The public records act is directed to the laudable objective of assuring that the people have the means of knowing what their government is doing. Yet, the right to know must occasionally be circumscribed when the potential damages far outweigh the possible benefits. In our opinion, to require public disclosure of the personnel files of governmental employees could result in irreparable harm to the public interest and would be against the public policy.
An indication of the public policy of our nation is found in the Federal Freedom of Information Act which exempts from public disclosure personnel and medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C.A. § 552(b)(6). On the state level, Rule 22A-11.03G of the rules and regulations of the Department of Administration suggests by implication that an employee's personnel record shall be open for inspection by others only with the permission of the employee.
*349 While personnel records are not exempt from Chapter 119 by the specific language, we believe that public policy clearly dictates that they be deemed confidential. In the absence of more specific language to the contrary, we do not believe that in enacting this chapter the legislature contemplated that the personnel records of government employees should be open for public disclosure by any citizen of the state.
We do not suggest that the records of a particular employee could not be reached by one having a direct interest therein in a suitable proceeding in which that employee was a party. However, those circumstances are not present in the instant case. In directing the issuance of a peremptory writ of mandamus, the trial judge stated that his ruling did not necessarily express his feelings. He said, "I feel that some great damage can be done by it... ." Therefore, perhaps he will not be too distressed to learn that his judgment is hereby
Reversed.
HOBSON, A.C.J., and BOARDMAN, J., concur.